# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CITY OF MELBOURNE FIREFIGHTERS' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI,<br><br>Defendants. | Case No. 1:21-cv-05345<br><br><br>**<u>CLASS ACTION</u>**<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff City of Melbourne Firefighters' Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVAC") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued and disseminated by the Company; (c) analyst and media reports concerning ATI; and (d) other public information regarding the Company.

## NATURE OF THE ACTION AND OVERVIEW

1.      This securities class action is brought on behalf of all investors that purchased or otherwise acquired ATI securities between February 22, 2021 and July 23, 2021, inclusive (the "Class Period"), and/or held shares of FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting.  The claims asserted herein are alleged against ATI and certain of the Company's current and former senior executives and the former directors of FVAC (collectively, "Defendants"), and arise under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14a-9, promulgated thereunder.

2.      Headquartered in Bolingbrook, Illinois, ATI provides outpatient rehabilitation services and operates nearly 900 physical therapy clinics across 24 states.  As such, the Company's ability to attract and retain enough physical therapists to service patient demand is critically important to the success of its business.

3.      On June 17, 2021, ATI became a publicly traded company upon the completion of a merger with FVAC (the "Merger"), a special purpose acquisition company ("SPAC").  A SPAC is a shell or "blank check" company formed for the sole purpose of raising money through a public offering to eventually acquire one or more companies.

4.      Throughout the Class Period, ATI touted the high rate of retention of its physical therapists as well as its adequate clinical staffing levels, and repeatedly affirmed its earnings guidance for 2021.  The Company also assured investors that it was poised for growth and expected to open over 90 new clinics in 2021.  ATI also represented that it faced purported risks with regard to increased competition for clinicians in the labor market and the Company's failure to recruit and retain physical therapists.  These and similar statements made during the Class Period were false and misleading.  In reality, at the start of the Class Period, ATI knew that it was experiencing

severe attrition among its physical therapists and was already suffering from increasing competition for clinicians in the labor market. As a result, ATI could not retain enough physical therapists to serve patient demand and incurred increased labor costs, which negatively impacted its business and limited its ability to open new clinics. As a result of Defendants' misrepresentations, ATI securities traded at artificially inflated prices throughout the Class Period.

5.      The truth was disclosed before the market opened on July 26, 2021, less than two months after the Merger closed, when ATI drastically reduced its full-year earnings guidance and revealed that it could only open between 55 and 65 new clinics in 2021—far short of the 90 clinics it had told investors it would open. The Company attributed its guidance cut to significant attrition among its physical therapists, which prevented it from meeting patient demand, and a competitive hiring market, which significantly increased its labor costs. As a result of these disclosures, the price of ATI stock declined over 43%, from $8.34 per share to $4.72 per share.

## JURISDICTION AND VENUE

6.      The claims alleged herein arise under Sections 10(b), 14(a), and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a) and 78t(a)), and Rules 10b-5 and 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5 and 17 C.F.R. § 240.14a-9). This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §§ 1331 and 1337.

7.      Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). ATI maintains its headquarters in Bolingbrook, Illinois which is situated in this District and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of

interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.    Plaintiff

8.     Plaintiff City of Melbourne Firefighters' Retirement System is a pension fund based in Melbourne, Florida that provides retirement benefits to retired firefighters.  As of October 1, 2020, Plaintiff managed assets in excess of $74 million on behalf of hundreds of active members, retirees, and beneficiaries.  As indicated on the certification submitted herewith, Plaintiff purchased ATI securities during the Class Period and held shares of FVAC Class A common stock as of May 24, 2021, the record date for shareholders to be eligible to vote on the Merger, and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.    Defendants

9.     Defendant ATI is incorporated in Delaware and maintains its principal executive offices at 790 Remington Boulevard, Bolingbrook, Illinois.  The Company's Class A common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "ATIP."  The Company's redeemable warrants trade on the NYSE under ticker symbol "ATIP WS."  Each whole redeemable warrant is exercisable for one share of Class A common stock at an exercise price of $11.50 per share.  As of August 12, 2021, ATI had over 196 million shares of Class A common stock outstanding, owned by hundreds or thousands of investors.

10.     Defendant Labeed Diab ("Diab") served as the Company's Chief Executive Officer ("CEO") and as a member of ATI's Board of Directors from 2019 to August 7, 2021.

11.     Defendant Joseph Jordan ("Jordan") has served as the Company's Chief Financial Officer ("CFO") since 2019.

12.     Defendant Andrew A. McKnight ("McKnight") served as the CEO of FVAC before

it completed the Merger with ATI on June 17, 2021 and, since then, has served as a director of ATI. McKnight solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the definitive proxy statement dated May 14, 2021 (the "Proxy Statement").

13.     Defendants Diab, Jordan, and McKnight are collectively referred to herein as the "ATI Individual Defendants." The ATI Individual Defendants, because of their positions with ATI, possessed the power and authority to control the contents of the Company's reports to the SEC and other public statements made by ATI during the Class Period. Each of the ATI Individual Defendants was provided with or had unlimited access to copies of the Company's reports or other statements alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the ATI Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

14.     Defendant Joshua A. Pack ("Pack") served as Chairman of the Board of Directors of FVAC at all relevant times. Pack solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

15.     Defendant Marc Furstein ("Furstein") served as a director of FVAC at all relevant times. Furstein solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

16.     Defendant Leslee Cowen ("Cowen") served as a director of FVAC at all relevant times. Cowen solicited and/or permitted the use of her name to solicit consent or authorization for

the Merger by issuing the Proxy Statement.

17. Defendant Aaron F. Hood ("Hood") served as a director of FVAC at all relevant times. Hood solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

18. Defendant Carmen A. Policy ("Policy") served as a director of FVAC at all relevant times. Policy solicited and/or permitted the use of her name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

19. Defendant Rakefet Russak-Aminoach ("Russak-Aminoach") served as a director of FVAC at all relevant times. Russak-Aminoach solicited and/or permitted the use of her name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

20. Defendant Sunil Gulati ("Gulati") served as a director of FVAC at all relevant times. Gulati solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

21. Defendants Pack, Furstein, Cowen, Hood, Policy, Russak-Aminoach, and Gulati are collectively referred to herein as the "FVAC Defendants."

## BACKGROUND

22. ATI is a physical therapy provider, specializing in outpatient rehabilitation and adjacent healthcare services, with nearly 900 physical therapy clinics across 24 states. As a provider of rehabilitation services, the Company's recruitment and retention of enough physical therapists to meet patient demand is vital to the success and growth of its business.

23. FVAC was incorporated in Delaware in June 2020 as a SPAC formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. FVAC completed an initial public offering on August 14, 2020, selling 34.5 million units at $10.00 per unit, generating

gross proceeds to FVAC of $345 million. Each unit consisted of one share of FVAC Class A common stock and one-fifth of one redeemable public warrant of FVAC, with each public warrant entitling the holder to purchase one share of FVAC Class A common stock at an exercise price of $11.50 per share. On October 2, 2020, shares of FVAC's Class A common stock and its public warrants began trading separately on the NYSE under the ticker symbols "FAII" and "FAII WS," respectively.

24. On February 22, 2021, ATI and FVAC announced a proposed merger that would take ATI public.

25. On May 14, 2021, FVAC filed its definitive proxy statement with the SEC, soliciting votes in favor of the Merger. Only holders of record of FVAC common stock at the close of business on May 24, 2021 (the "Record Date") were entitled to vote on the Merger at the FVAC special meeting of stockholders on June 15, 2021. In connection with the Merger, FVAC shareholders had the option to either retain their shares, which would be converted to shares of ATI Class A common stock upon completion of the Merger, or redeem their shares for $10.00 per share in cash, whether they voted for or against the Merger, or abstained from voting.

26. On June 17, 2021, ATI completed the Merger with FVAC, and shares of the combined company's common stock began trading on the NYSE under the ticker symbol "ATIP."

## MATERIALLY FALSE AND MISLEADING STATEMENTS
## ISSUED DURING THE CLASS PERIOD

27. The Class Period begins on February 22, 2021, when ATI and FVAC announced that they had entered into a definitive merger agreement through which ATI would become a public company at a valuation of approximately $2.5 billion. In connection with that announcement, FVAC filed proxy solicitation materials with the SEC, which included slides prepared by ATI and used during a presentation to investors. In the slides, ATI touted its

"Investment in Clinical Optimization" in 2020, which led to "[c]ontinued improvements in [its] clinical labor management model to allow providers to practice at the top of their respective licenses" and "[p]ositioned the company for long-term growth and scale economics." The Company also emphasized "Accelerated Enhancements" during the COVID-19 pandemic, which included its "[a]ccelerated staffing strategy." ATI also stated that it had a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond," which included the Company's "Deep pipeline to support 90+ de novos in 2021."[1] In addition, ATI provided financial guidance that it would achieve $731 million in revenue and $119 million in adjusted EBITDA in 2021.[2]

28.     That same day, during a presentation to investors discussing the proposed Merger, a transcript of which FVAC filed with the SEC as proxy solicitation material, ATI's then-CEO, Defendant Diab, touted the Company's "very high retention" and "low turnover" of its physical therapists.

29.     On April 1, 2021, FVAC filed additional proxy solicitation materials with the SEC, which included slides prepared by ATI for a presentation during the Company's Analyst Day. In the slides, ATI touted its "Investment in Clinical Optimization" in 2020, which led to "[c]ontinued improvements in [its] clinical labor management model to allow providers to practice at the top of their respective licenses" and "[p]ositioned the company for long-term growth and scale economics." The Company also emphasized "Accelerated Enhancements" during the COVID-19 pandemic, which included its "[a]ccelerated staffing strategy." ATI also touted its ability to recruit and retain physical therapists, claiming that the Company was the "Employer of Choice for [Physical Therapy] Clinicians" and emphasizing its purported "Best-in-class infrastructure built to

---

[1] A "de novo" is ATI's term for a brand-new clinic that ATI builds from the ground up.

[2] ATI defines adjusted EBITDA as "earnings before provision for income taxes, interest expense, depreciation and amortization expense, restructuring and transaction costs, stock-based compensation expense, de-novo losses and other non-operating adjustments."

attract, develop, and retain future leaders in [physical therapy]." The Company also highlighted its "Proprietary Systems to Optimize Clinic Performance," including its labor management system, which enables "optimization of clinical labor mix and cost to serve." ATI also stated that it had a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond," which included the Company's "Deep pipeline to support 90+ de novo clinics in 2021" and "Significant labor savings through [a] more productive staffing model." In addition, ATI reaffirmed its full-year 2021 earnings guidance.

30.     On May 14, 2021, FVAC filed its definitive proxy statement with the SEC on Schedule 14A, soliciting votes in favor of the Merger. The Proxy Statement touted ATI's ability to recruit and retain physical therapists, emphasizing its robust infrastructure and human resources organization that is "built to attract, develop, and retain future leaders in physical therapy." The Proxy Statement also touted the Company's "competitive compensation model" and stated that ATI has "historically been able to realize high retention rates across [its] organization." In addition, among the material factors that FVAC's Board of Directors considered as supporting approval of the Merger, the Proxy Statement listed ATI's "Attractive Recruiting and Retention Capabilities" as compared to other companies in the industry, "which allows the Company to recruit and retain talent." Further, in the Proxy Statement, Defendants represented that the Company faced ostensible risks regarding competition for clinicians in the labor market as well as its ability to recruit and retain physical therapists. In particular, Defendants represented that competition for physical therapists and other clinical providers "may increase labor costs and reduce profitability." Defendants further stated that "[i]f the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, . . . its business may decrease and its revenues may decline." In addition, Defendants stated that ATI "may also experience increases in its labor costs, primarily due to higher wages and greater benefits required

to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability." Defendants further represented that the Company's efforts to manage overall labor costs "may have limited effectiveness and may lead to increased turnover and other challenges."

31. On May 20, 2021, between the announcement of the Merger and its expected closing in June 2021, ATI issued a press release announcing its financial results for the first quarter of 2021, which FVAC also filed with the SEC as additional proxy materials. In the press release, Defendant Diab touted the Company's opening of 14 new clinics during the quarter and represented that ATI was "on track to achieve our de novo development targets for [2021]." Defendant Diab also stated that "[a]s we look ahead to the remainder of 2021, we are focused on accelerating hiring to serve outsized demand in specific markets" and "continuing our growth with a fast pace of new clinic openings." In addition, Defendant Jordan stated that, during the quarter, "[a]s visits increased each month, we were able to better leverage fixed costs and improve labor productivity" and "[a]s volume continues to recover, we are excited to fully utilize our platform and deliver margin improvements."

32. That same day, FVAC filed additional proxy materials with the SEC, which included ATI's financial results for the first quarter of 2021. The additional proxy materials stated that, in response to reduced visits by patients to ATI's clinics during the COVID-19 pandemic, "the Company implemented measures to reduce labor-related costs in relation to the reduced visit volumes through reduced working schedules, voluntary and involuntary furloughs and headcount reductions." The additional proxy materials further represented that, beginning in the first quarter of 2021, visit volumes increased, and that "the Company continues to match its clinical staffing levels accordingly."

33.     On May 24, 2021, FVAC filed additional proxy materials with the SEC, which included slides prepared by ATI and presented to investors at a healthcare conference that month. In the presentation, the Company stated that a "Key Focus for [the] Remainder of 2021" was to "[a]ccelerate hiring to serve outsized demand" and "[c]ontinue to grow through new clinic openings." ATI also stated that it had a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond," which included the Company's "Deep pipeline to support 90+ de novo clinics in 2021" and "Significant labor savings through [a] more productive staffing model." In addition, ATI reaffirmed its full-year 2021 earnings guidance.

34.     The statements set forth above in ¶¶27-33 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading. In truth, at the start of the Class Period, ATI was experiencing severe attrition among its physical therapists and faced increasing competition for clinicians in the labor market. As a result, the Company failed to maintain enough physical therapists to serve patient demand and incurred increased labor costs, which negatively impacted its business and limited its ability to open new clinics. As a result, Defendants' positive statements about ATI's business, operations, and prospects, including its 2021 earnings guidance, were materially misleading and/or lacked a reasonable basis. In addition, to the extent the Company purported to warn of risks of increased competition for clinicians in the labor market and its inability to recruit and retain physical therapists, Defendants omitted that such risks had already materialized.

**THE TRUTH EMERGES**

35.     Before the market opened on July 26, 2021, less than two months after becoming a public company, ATI reported its financial results for the second quarter of 2021—the same quarter in which the Merger was completed. The Company revealed that "the acceleration of

11

attrition among our therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our labor costs." As a result, ATI significantly reduced its full-year 2021 revenue guidance from $731 million to a range of $640 million to $670 million, and its adjusted EBITDA guidance from $119 million to a range of $60 million to $70 million. Further, ATI lowered its estimate for new clinic openings in 2021, from 90 clinics to between 55 and 65 clinics, which was also driven by the severe attrition of the Company's physical therapists. In addition, ATI disclosed that the revision to its 2021 earnings guidance constituted an interim triggering event that required further analysis regarding potential impairment to its goodwill and trade name intangible assets, and that ATI would perform interim impairment testing during the third quarter of 2021, the results of which could lead to a material impairment charge for the Company. As a result of these disclosures, ATI's stock price declined by over 43%, from $8.34 per share on July 23, 2021 to $4.72 per share on July 26, 2021.

36.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **LOSS CAUSATION**

37.     As a result of their purchases of ATI securities during the Class Period and/or their holdings of FVAC shares at the Record Date—and Defendants' material misstatements and omissions—Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

38.     During the Class Period, Plaintiff and other members of the Class purchased ATI securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the previously misrepresented and concealed material facts

about ATI's financial results, operations, and prospects, as alleged herein, were revealed, causing investors' losses.

39.     In addition to the decline in the price of ATI securities caused by the corrective disclosure, FVAC shareholders who were eligible to vote on the Merger and/or exercise their conversion rights were also harmed as a result of the materially false and misleading statements about ATI's operations and financial results.  Had the truth about ATI's financial condition and operations been known, members of the Class eligible to vote on the Merger would have voted against the Merger and/or exercised their conversion rights and received $10.00 in cash per share of FVAC common stock.

40.     It was entirely foreseeable that the false and misleading statements about, among other things, ATI's financial results, condition, and value would artificially inflate the price of ATI securities and that the disclosure of this information would cause the price of ATI securities to decline as the inflation caused by Defendants' earlier misrepresentations and omissions was removed from the price of ATI securities.  It was also foreseeable that Defendants' false and misleading statements would cause those members of the Class that would have received $10.00 in cash per share of FVAC common stock upon exercising their conversion rights and/or upon liquidation to retain their stock in lieu of receiving $10.00 in cash per share, and that the disclosure of the information about ATI's financial condition and operations would result in those members of the Class owning shares worth substantially less than $10.00 per share.

41.     Accordingly, Defendants' conduct, as alleged herein, directly and proximately caused foreseeable losses to Plaintiff and other members of the Class.

### CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all investors that: (a) purchased or otherwise acquired ATI

securities during the Class Period; and/or (b) held shares of FVAC Class A common stock as of May 24, 2021, eligible to vote at FVAC's special meeting on June 15, 2021 (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of ATI and their families and affiliates.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of the close of business on the Record Date—May 24, 2021—FVAC had 34,500,000 shares of Class A common stock outstanding and entitled to vote on the Merger, held by hundreds or thousands of investors.  As of August 12, 2021, ATI had over 196 million shares of Class A common stock outstanding, owned by hundreds or thousands of investors.

44.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether ATI and the ATI Individual Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of ATI securities;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

45.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

46.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

47.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements described in this Complaint. Many of the specific statements described herein were not identified as "forward-looking" when made.  To the extent that there were any forward-looking statements, there was no meaningful cautionary language identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements described herein, Defendants are liable for those false forward-looking statements because at the time each was made, the particular speaker knew that the particular forward-looking statement was false or misleading, and/or that the forward-looking statement was authorized and/or approved by an executive officer of ATI who knew that those statements were false or misleading when made.

## PRESUMPTION OF RELIANCE

49.     At all relevant times, the market for ATI securities was an efficient market for the following reasons, among others:

(a)     ATI's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, ATI filed periodic public reports with the SEC and the NYSE;

(c)     ATI regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     ATI was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for ATI securities promptly digested current information regarding ATI from all publicly available sources and reflected such information in the price of ATI shares.  Under these circumstances, all purchasers of ATI securities during the Class Period suffered similar injury through their purchase of ATI securities at artificially inflated prices and the presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's

business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of ATI's ability to recruit and retain physical therapists and contain its labor costs, as set forth above, that requirement is satisfied here.

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Against ATI and the ATI Individual Defendants (the "ATI Defendants")**

52.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, the ATI Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (b) cause Plaintiff and other members of the Class to purchase ATI securities at artificially inflated prices.

54.     The ATI Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ATI securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

55.     The ATI Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

56.     During the Class Period, the ATI Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     The ATI Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. The ATI Defendants engaged in this misconduct to conceal ATI's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ATI securities. Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for ATI securities had been artificially inflated by the ATI Defendants' fraudulent course of conduct.

59.     As a direct and proximate result of the ATI Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

60.     By virtue of the foregoing, the ATI Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act**
**Against the ATI Individual Defendants**

61.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

62.     The ATI Individual Defendants acted as controlling persons of ATI within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about ATI, the ATI Individual Defendants had the power and ability to control the actions of ATI and its employees, including, among other things, the content of the Proxy Statement and other proxy solicitation materials described herein, thereby causing the dissemination of untrue statements and omissions of material facts as alleged herein. By reason of such conduct, the ATI Individual Defendants are liable under Section 20(a) of the Exchange Act.

### COUNT III

**For Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against All Defendants**

63.     This claim does not sound in fraud.  For the purposes of this claim, Plaintiff does not allege that any Defendant acted with fraudulent intent.

64.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

65.     This claim is brought against all Defendants pursuant to Section 14(a) of the Exchange Act and Rule 14a-9, promulgated thereunder, on behalf of all former shareholders of FVAC who held shares FVAC Class A common stock as of the Record Date and were entitled to vote at the FVAC special meeting on June 15, 2021 with respect to the Merger.

66.     Defendants' statements issued to solicit shareholder approval of the Merger, including the Proxy Statement, and the documents incorporated therein, and other proxy solicitation materials, contained statements that, at the time and in light of the circumstances under

which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading.

67. Defendants named in this Count were required to but did not accurately update these statements between dissemination of these documents and the shareholder vote on June 15, 2021.

68. Defendants named in this Count, jointly and severally, solicited and/or permitted use of their names in solicitations contained in the Proxy Statement and other proxy solicitation materials.

69. By means of the Proxy Statement and documents attached thereto or incorporated by reference therein and other proxy solicitation materials, Defendants sought to secure Plaintiff's and other Class members' approval of the Merger and solicited proxies from Plaintiff and other members of the Class.

70. Each Defendant named in this Count acted negligently in making inaccurate statements of material facts, and/or omitting material facts required to be stated in order to make those statements not misleading. Defendants were required to ensure that the Proxy Statement and all other proxy solicitation materials fully and fairly disclosed all material facts to allow an investor to make an informed investment decision. These Defendants also acted negligently in failing to update the Proxy Statement.

71. The solicitations described herein were essential links in the accomplishment of the Merger.

72. Plaintiff and other members of the Class eligible to vote on the Merger were misled by Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Merger, and were damaged as a direct and

proximate result of the untrue statements and omissions set forth herein.

73.     The false and misleading statements and omissions in the Proxy Statement and other proxy solicitation materials are material in that a reasonable stockholder would consider them important in deciding how to vote on the Merger and/or whether to exercise their conversion right to receive $10.00 in cash per share of FVAC stock.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement, additional proxy solicitation materials, and in other information reasonably available to stockholders.

74.     The untrue statements and omissions as set forth above proximately caused foreseeable losses to Plaintiff and other members of the Class.

75.     By reason of the foregoing, the Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, promulgated thereunder, 17 C.F.R. § 240.14a-9.

## PRAYER FOR RELIEF

76.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

77.     Plaintiff demands a trial by jury.

DATED: October 7, 2021

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Hannah Ross
Scott R. Foglietta
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Melbourne Firefighters' Retirement System*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

Robert D. Klausner
Bonni S. Jensen
7080 Northwest 4th Street
Plantation, Florida 33315
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
bonni@robertdklausner.com

*Additional Counsel for Plaintiff City of Melbourne Firefighters' Retirement System*

**CERTIFICATION PURSUANT TO
THE FEDERAL SECURITIES LAWS**

I, Monte Rann, on behalf of City of Melbourne Firefighters' Retirement System ("Melbourne"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Melbourne. I have reviewed the complaint with our legal counsel. Based on legal counsel's knowledge and advice, Melbourne has authorized the filing of the complaint.

2. Melbourne did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Melbourne is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Melbourne' transactions in the ATI Physical Therapy, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Melbourne has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6. Melbourne will not accept any payment for serving as a representative party on behalf of the Class beyond Melbourne' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of October, 2021.

_____
Monte Rann
Chairman
*City of Melbourne Firefighters' Retirement
System*

**City of Melbourne Firefighters' Retirement System**
**Transactions in ATI Physical Therapy, Inc. ("ATIP")**
**f/k/a Fortress Value Acquisition Corp. II**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| **Fortress Value Acquisition Corp. II** | | | |
| Purchase | 3/30/2021 | 47 | 10.0468 |
| Purchase | 3/30/2021 | 5,105 | 10.0932 |
| Purchase | 3/31/2021 | 42 | 10.0923 |
| Purchase | 4/6/2021 | 221 | 9.9738 |
| Purchase | 4/6/2021 | 1,271 | 9.9950 |
| Conversion to ATIP | 6/17/2021 | 6,686 | |